UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| REITA N. AGARWAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:07-1149 |
| ) | Judge Echols |
| GORDON H. MANSFIELD, Acting ) | |
| Secretary of Veterans Affairs, ) | |
| Department of Veterans Affairs, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

This employment discrimination action brought under Title VII, 42 U.S.C. § 2000e *et seq.*, is before the Court on Defendant's Motion to Dismiss or Alternatively for Summary Judgment (Docket Entry No. 9). Plaintiff Reita N. Agarwal ("Dr. Agarwal") has responded in opposition to that Motion.

### I. FACTUAL BACKGROUND

Defendant seeks dismissal or summary judgment based upon the claims made in Plaintiff's Complaint. The Complaint alleges the following.

Dr. Agarwal is a physician employed by the Department of Veterans Affairs who worked in the Emergency Room at the Alvin C. York Medical Center Campus in Murfreesboro, Tennessee from September 2000 until May 2005. The Alvin C. York Medical Center is part of the Tennessee Valley Healthcare System, which is a part of the Department of Veterans Affairs.

Plaintiff claims that in May 2005, Dr. Dharapuram Venugopal ("Dr. Venugopal"), the Chief Medical Officer of the Primary Care Division and Dr. Agarwal's supervisor, temporarily reassigned Dr. Agarwal from the Emergency Room to the Primary Care Clinic at the Alvin C. York Medical Center. This Clinic is referred to by some as the "Never Been Here" Clinic. Plaintiff had requested

a transfer from the Emergency Room at Alvin C. York Medical Center to an open position in the emergency department at Tennessee Valley Healthcare System's Nashville, Tennessee campus.

Plaintiff remained at the "Never Been Here" Clinic for several months. When she was not transferred back to the emergency room at Alvin C. York Medical Center, she filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). That complaint was filed on August 30, 2005.

In October of 2005, Dr. Agarwal requested that Dr. Venugopal recommend her for attendance at a Leadership Institute called the VISN-9. Dr. Venugopal did not recommend Dr. Agarwal and instead wrote on her application that he felt further training was not warranted "until conflict resolutions and working as a group is resolved."

Dr. Rex James ("Dr. James"), the Acting Chief of Medicine at Alvin C. York Medical Center, reviewed Dr. Agarwal's application and spoke with her about the concerns expressed by Dr. Venugopal. Dr. James then met with Dr. Venugopal about the comments. After the meeting, Dr. Venugopal retracted the comments he had made, allegedly destroyed the portion of Dr. Agarwal's application containing his comments, and replaced that potion of the application with language that contained no derogatory comments. Nevertheless, Dr. Agarwal was not accepted into the VISN-9 Leadership Institute in 2006.

In early 2006, Dr. Agarwal's union became involved in the fray by asking the Department of Veterans Affairs to transfer Dr. Agarwal back to the Emergency Room at Alvin C. York Medical Center. Dr. Agarwal also requested, via numerous letters and e-mails, that she be moved back to the Emergency Room. Dr. Venugopal refused to transfer Dr. Agarwal from the "Never Been Here" Clinic back to the Emergency Room and, in March 2006, informed both the union and Plaintiff that Dr. Agarwal would remain assigned to the clinic until further notice.

Dr. Agarwal claims she lost money by not working in the Emergency Room because her position at the "Never Been Here" Clinic was assigned a lower pay scale. She also claims that by being in the "Never Been Here" Clinic she had no chance for advancement.

Based on these events, Dr. Agarwal filed a charge with the EEOC claiming retaliation for her earlier filing. Ultimately, an Administrative Law Judge, after a hearing, issued an opinion which found that Plaintiff had failed to prove reprisal (retaliation). This lawsuit followed in which Dr. Agarwal claims retaliation in violation of Title VII based upon Dr. Venugopal's alleged refusal to move her back to the Emergency Room at Alvin C. York Medical Center and his derogatory comments on her application for the Leadership Institute.

## II. STANDARD OF REVIEW[1]

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

To defeat a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue of material fact for trial. If the party does not so respond, summary judgment will be entered if appropriate. Fed. R. Civ. P. 56(e). The

---

[1]While Defendant alternatively requests that the action be dismissed under Fed. R. Civ. P. 12(b) or that judgment be granted under Fed. R. Civ. P. 56(c), the Court will analyze the motion as one for summary judgment under Rule 56 since both parties reference assorted materials outside the Complaint. See, Fed. R. Civ. P. 12(d).

3

nonmoving party's burden of providing specific facts demonstrating that there remains a genuine issue of material fact for trial is triggered once the moving party shows an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 325. A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in its favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. LEGAL ANALYSIS

Defendant moves for dismissal on two grounds. First, Defendant claims that Dr. Agarwal has failed to exhaust her administrative remedies with respect to Dr. Venugopal's alleged refusal to transfer Dr. Agarwal back to the emergency department at Alvin C. York medical center. Second, Defendant argues Dr. Agarwal's claim based upon her failure to be accepted into the Leadership Institute is moot.

**A. Exhaustion of Administrative Remedies**

The parties to this suit recognize the well-established principle that "a party's exhaustion of administrative processes for filing a claim of discrimination is a condition precedent to suit in the district court, rather than a jurisdictional prerequisite." Mitchell v. Chapman, 343 F.3d 811, 819-20 (6th Cir. 2006). They also recognize that the exhaustion of administrative remedies includes filing a timely charge of discrimination with the appropriate agency. See, Auston v. City of Clarksville, 244 Fed. Appx. 639, 647 (6th Cir. 2007) citing, 42 U.S.C. § 2000e-5. They part company in their analysis of whether Dr. Agarwal administratively exhausted the failure to transfer claim that she raises in this lawsuit.

While a party is required to exhaust his or her administrative remedies, "courts will also review any additional claims that 'can reasonably be expected to grow out of the EEOC charge.'"

4

Young v. Daimler Chrysler Corp., 52 Fed. Appx. 637, 639 (6th Cir. 2002)(citation omitted). "For a charge to grow out of an ensuing investigation, the plaintiff's EEOC charge must, at a minimum, relate *facts* that would prompt the EEOC to consider or investigate other forms of discrimination." Id. (emphasis in original). The rationale for this exception to the administrative exhaustion requirement is that claims which arise out of the EEOC charge place the employer and administrative agency on notice, allowing investigatory and conciliatory procedures to go forward. See, Davis v. Soexho, Cumberland Coll. Cafeteria, 157 F.3d 460, 463 (6th Cir. 1998).

In this case, Dr. Agarwal at one point listed eighteen discrete acts as the basis for her reprisal/retaliation claim. However, by the time of the administrative proceeding, Dr. Agarwal had pared down her specific acts of retaliation and in her opinion, the Administrative Law Judge identified the acts as follows:

> 1. Whether the Complainant was discriminated against on the basis of reprisal (prior EEO activity), in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-16 (Title VII), when on October 14, 2005, her application to attend the VISN 9 Leadership Institute 2006 was not recommended, and
>
> 2. Whether the Complainant was discriminated against on the basis of reprisal (prior EEO Activity), in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-16 (Title VII), when on or about March 24, 2006, she was assigned to a Primary Care Clinic.[2]

(Docket Entry No. 10-4 at 2-3). Based upon this formulation of the issues, Defendant asserts that Dr. Agarwal did not exhaust her administrative remedies with respect to Dr. Venugopal's alleged "refusal to return Plaintiff to the Emergency Room." (Docket Entry No. 10 at 7).

The Court agrees with Dr. Agarwal's assertion that "the Defendant is being hyper technical by arguing that the issue of refusing to reassign Dr. Agarwal back to the emergency room was not

---

[2]Though not made clear in the papers filed by the parties, a review of the limited administrative record which has been supplied to the Court suggests that the "assignment" referenced in issue two relates to Dr. Venugopal's report to both the union and Plaintiff that Dr. Argawal was assigned to the clinic until further notice.

5

raised during the administrative process." (Docket Entry No. 6 at 6). At the start of the hearing, the Administrative Law Judge identified the issues noted above and then, in response to a question from counsel, indicated that the parties could get into "everything that surrounds" the reassignment issue. (Docket Entry No. 10-7 at 4). During the course of the administrative hearing, Dr. Venugopal was extensively questioned by both counsel and the Administrative Law Judge about his decision not to transfer Dr. Agarwal back to the Emergency Room after he moved her to the "Never Been Here" clinic. Further, in her opinion, the Administrative Law Judge discussed Dr. Venugopal's decision not to return Dr. Agarwal to the emergency room from the primary care clinic, writing:

> Similarly, turning to the issue of her reassignment to a Primary Care Clinic in March 2006, the Agency maintains that Dr. Venugopal had the authority to assign her to a position in Primary Care where he felt she was best suited. Dr. Venugopal testified that in early 2006 the Complainant's Union sent him an inquiry regarding when the Complainant would be returned to the ER, there "was no question" in his mind of returning the Complainant to the ER. . . . As such, in an effort not to return to a contentious atmosphere and based on the needs of the service, he elected to continue her assignment to a Primary Care clinic "until further notice." Again, Dr. Venugopal asserts that this action was not taken in order to retaliate against the Complainant.

(Docket Entry No. 10-4 at 13, internal citations omitted). Later in that same decision, the Administrative Law Judge wrote:

> [T]he Complainant does argue that Dr. Venugopal's reason for not returning her to the ER is unworthy of credence because he somehow "lied" when he took her April 2005 emails as requests for reassignment. That the emails request reassignment from the ER cannot be seriously questioned, however, based on the plain meaning of the language used therein. . . .
> Based on the above, the only question that remains is, given the Agency's reasons for reassigning her, why would the Complainant believe that she was entitled to be returned to the ER in March 2006?

(Id at 18, internal citations omitted). On numerous other occasions, the Administrative Law Judge noted the conflicts that Plaintiff allegedly had with personnel in the Emergency Room and in a footnote observed that "it is hard to believe that, given the situation that existed, anyone in Complainant's position would expect to be returned to the ER." (Id. at 20-21 n.4).

6

Given this record, it can hardly be said that Defendant was not placed on notice of Dr. Agarwal's retaliation claim relating to Dr. Venugopal's failure to transfer her back to the Emergency Room, or that Defendant's ability to conciliate or investigate such a claim was thwarted. In this respect, Defendant's reliance on cases such as <u>Bowers v. Nicholson</u>, 2007 WL 3047223 (S.D. Tex. 2007) is misplaced. In <u>Bowers</u>, plaintiff knowingly signed and forwarded to his EEO counselor a form which indicated he was withdrawing his complaint of discrimination and he wished to "close the complaint at the informal level." <u>Id</u>. at *2. Here, to the contrary, Dr. Agarwal never withdrew her claim of retaliation and the specific issue of the failure to be reassigned back to the Emergency Room was examined during the administrative proceedings. Accordingly, this claim will not be dismissed.

**B. <u>Mootness</u>**

As Defendant correctly observes, "[a] federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue." <u>Ford v. Wilder</u>, 469 F.3d 500, 504 (6th Cir. 2006). Thus, "[i]f events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give meaningful relief, then the case is moot and must be dismissed." <u>Ailor v. City of Maynardsville</u>, 368 F.3d 587, 596 (6th Cir. 2003).

In this case, Defendant asserts Dr. Agarwal's claim relating to the 2006 VISN-9 Leadership Institute is moot. This is so, Defendant theorizes, because Dr. Agarwal submitted an application for the next year's program, Dr. Venugopal recommended her for approval and Plaintiff did in fact attend the 2007 VISN-9 Leadership Institute.

Dr. Agarwal's claim relating to the 2006 VISN-9 Leadership Institute is not moot. Among other requests for relief in her Complaint, Dr. Agarwal seeks compensatory damages and punitive damages. The possibility of an award of compensatory or punitive damages based upon Defendant's earlier act presents a case or controversy within the meaning of Article III. <u>See</u>, <u>Powell v.

7

McCormack, 395 U.S. 486, 496 (1969); Hastings v. F.A.A., 187 F.3d 938, 941 (8th Cir. 1999); Chicago Fire Fighters Union Local v. City of Chicago, 2007 WL 2126088 at *5 (N.D. Ill. 2007). Accordingly, Dr. Agarwal's claim involving the denial of her 2006 VISN-9 Leadership Institute application is not moot.

## IV. CONCLUSION

On the basis of the foregoing, Defendant's Motion to Dismiss or Alternatively for Summary Judgment (Docket Entry No. 9) will be denied.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE